**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| **THE SOLOMON FOUNDATION, a Colorado Nonprofit Corporation,** <br> **16965 Pine Lane, Suite 200** <br> **Parker, Colorado 80134** <br><br>     **Plaintiff,** <br><br>     **vs.** <br><br> **CHRISTIAN FINANCIAL RESOURCES, INC., a Florida Not for Profit Corporation,** <br> **148 International Parkway, #1001** <br> **Lake Mary, Florida 32746** <br><br>     **Serve: Darren Key (Registered Agent)** <br>     **1971 Lake Markham Preserve Trail** <br>     **Sanford, Florida 32771-8103** <br><br> **MICHAEL KOCOLOWSKI, an individual, and** <br> **33000 Cardinal Lane** <br> **Sorrento, Florida 32776** <br><br> **TIMOTHY STEPHENS, and individual,** <br> **1711 Snug Harbor Drive** <br> **Greensboro, Georgia 30642** <br><br>     **Defendants.** | **Civil Action No.** |

**THE SOLOMON FOUNDATION'S COMPLAINT AND JURY DEMAND**

1.    The Solomon Foundation ("Solomon") is a Church Extension Fund based in Parker, Colorado. Solomon is a missional partner for pastors and churches. More specifically, Solomon raises funds from investors, through the issuing of debt securities, and then lends those funds to churches within the Restoration Movement of Christian Churches, Churches of Christ, and the

International Church of Christ for land acquisitions, construction projects, and refinancing. In short, Solomon works every day to help churches start, grow, and reach additional members.

2.      Christian Financial Resources, Inc. ("CFR") is a Church Extension Fund based in Lake Mary, Florida. CFR also lends funds to churches within the same affiliation as Solomon.

3.      CFR has a regrettable history of making unfounded, false, and defamatory statements to third parties, including third-party stakeholders, regarding Solomon. Solomon has approached CFR privately and asked them to stop making these unfairly damaging statements. Despite the close-knit nature of the Church Extension Fund community, and the necessary understanding of the enhanced damage such unfounded comments inflict, CFR has consistently disregarded Solomon's requests. CFR, therefore, knowingly made these false statements about Solomon in a misguided effort to dishonorably damage Solomon's reputation and to dishonestly lure Solomon's customers away from Solomon and over to CFR.

4.      CFR's defamatory statements regarding Solomon peaked in September 2021 at the annual Denominational Investors and Loan Administrators ("DILA") conference in Baltimore, Maryland. At that conference, two high-ranking representatives of CFR, Mike Kocolowski and Tim Stephens, in a coordinated manner, separately approached Solomon's independent auditors and falsely accused Solomon of operating a "Ponzi Scheme" (which, as understood in common parlance and per *Merriam-Webster*, is a criminal investment scheme/swindle that pays existing investors with funds collected from new investors).

5.      To put a finer point on it, CFR accused Solomon—a Christian nonprofit devoted to nurturing and growing churches within the Restoration Movement—of operating a criminal enterprise. CFR made these coordinated and targeted false and defamatory statements to

Solomon's independent auditors with the clear intent of inflicting the greatest possible reputational and financial harm on Solomon.

6.      There is no basis whatsoever for CFR's defamatory statements. As CFR knows well, Solomon is a leading Church Extension Fund that sets the standard for integrity and conducts itself as a missional partner for churches and pastors.

7.      As a result of CFR's misconduct, and subsequent compounding refusals to correct its misdeeds, Solomon has suffered serious damage.  For example, CFR caused Solomon to expend additional resources on its independent auditors who were compelled to investigate and confirm as entirely unfounded CFR's false and defamatory statements – resources that Solomon would not otherwise have had to expend, but for CFR's misconduct.

8.      Worse, CFR's actions sought to dishonestly besmirch Solomon's good name in the eyes of a close-knit, Christian community. CFR, in short, has left Solomon with no choice but to pursue this action and set the record straight.

## I.      PARTIES

9.      Solomon is a Colorado nonprofit corporation with its principal place of business in Parker, Colorado.

10.     CFR is a Florida not for profit corporation with its principal place of business in Lake Mary, Florida.

11.     Defendant Kocolowski, CFR's Chief Stewardship Officer and former Chief Operating Officer, is an individual domiciled in Florida.

12.     Defendant Stephens, the former Chief Development Officer of CFR, is an individual domiciled in Georgia.

13.     CFR, Defendant Kocolowski, and Defendant Stephens are referred to collectively herein as "Defendants."

## II.     JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because: (1) there is complete diversity between Solomon and the Defendants; and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

15.     This Court has personal jurisdiction over Defendants because they committed at least a portion of the tortious acts that are the subject of this Complaint in Maryland.

16.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## III.     GENERAL ALLEGATIONS

**A.     Douglas Crozier forms Solomon as a missional partner for churches and pastors.**

17.     Solomon was formed in December 2010 and is currently the fourth-largest Church Extension Fund in the United States.

18.     Douglas Crozier is Solomon's Chief Executive Officer. Having worked in the Church Extension Fund industry for approximately 30 years, Mr. Crozier formed Solomon at the request of key churches and pastors within the Restoration Movement.

19.     Solomon uses funds raised from investors to help churches and pastors within the Restoration Movement advance their missions and reach more members.

20.     Solomon loans funds to churches and pastors for land acquisitions, construction projects, and refinancing.

21.     Solomon for good reason prides itself on its reputation as an organization that acts as a trustworthy and reliable missional partner for its church and pastor clients. In other words,

Solomon is not just a lender. Solomon lifts up its church and pastor clients and helps them advance their missions.

**B.      CFR establishes a pattern of defaming Solomon.**

22.      CFR is also a Church Extension Fund. CFR is currently the nation's sixth largest Church Extension Fund.

23.      Darren Key is CFR's Chief Executive Officer.

24.      Prior to Mr. Crozier forming Solomon, Mr. Key engaged Mr. Crozier as a consultant to help CFR develop a plan to grow outside Florida into the southeastern United States. Mr. Crozier mentored Mr. Key for several years and Mr. Key considered Mr. Crozier as his mentor.

25.      After helping CFR as a consultant, Mr. Crozier formed Solomon. A few years after Mr. Crozier formed Solomon, CFR began unfairly disparaging Solomon to third parties within the Restoration Movement. The leaders within the movement are a tight-knit group. As a result, CFR's negative and false comments about Solomon spread quickly.

26.      CFR has since maintained a pattern and practice of making defamatory statements about Solomon.  CFR chose to engage in such improper conduct in the context of its brazen efforts to convince Solomon's clients—churches or pastors—to leave their relationships with Solomon and move their business to CFR. Thus, CFR's unfair, inaccurate, and harmful disparagement of Solomon appears to be spurred by its desire to take business from Solomon.

27.      On multiple occasions, Mr. Crozier has reached out to Mr. Key and asked that he take action to ensure that CFR personnel stop baselessly disparaging Solomon. Mr. Key in one

instance laughed at Mr. Crozier's request, and, in any event, to date has refused to take any action;

CFR's baseless defamation of Solomon has, accordingly, continued.

**C.   CFR, Defendant Kocolowski, and Defendant Stephens in a coordinated fashion separately approach Solomon's third-party auditors and falsely accuse Solomon of operating a criminal "Ponzi Scheme."**

28.   CFR's defamation of Solomon peaked in September 2021 at the annual DILA conference held in Baltimore, Maryland.  The 2021 DILA conference, ironically in light of CFR's activities, had as its explicit and laudable mission "help[ing] maximize the effectiveness of not-for-profit entities organized to provide loans to various affiliated churches and related religious organizations within their Denomination. . . ."

29.   Defendant Kocolowski is CFR's Chief Stewardship Officer and former Chief Operating Officer.

30.   Defendant Stephens is the former Chief Development Officer for CFR, as well as a former consultant for, and representative of, CFR. Prior to working at CFR, Defendant Stephens was employed by Church Development Fund, Inc. in Irvine, California (now known as CDF Capital, Inc.). Mr. Crozier, while serving as President of Church Development Fund, Inc., terminated Defendant Stephens' employment while Defendant Stephens served as a Regional Vice President.

31.   Defendants Kocolowski and Stephens attended the 2021 DILA conference as CFR's representatives.

32.   During that conference—and, specifically, on or about September 21, 2021—Defendant Kocolowski and Defendant Stephens, in a coordinated and transparent effort to defame Solomon, each separately approached two representatives of Solomon's independent outside

-6-

auditor.

33.    As described in greater detail below, Defendant Kocolowski approached one representative of Solomon's independent outside auditor, while Defendant Stephens approached a second representative of Solomon's independent outside auditor at a different location within the DILA conference.

34.    Defendant Kocolowski approached a representative of Solomon's auditor while that representative was overseeing the auditor's booth at the Conference.

35.    Simultaneously, Defendant Stephens, at a different location within the DILA conference, approached another representative of Solomon's auditor while that representative was speaking to a person from another auditing firm between conference sessions.

36.    Defendants Kocolowski and Stephens knew that the individuals they approached worked for Solomon's independent auditor, and they knowingly targeted them for their defamatory statements.

37.    In their simultaneous conversations with representatives of Solomon's outside auditor, Defendants Kocolowski and Stephens—without any prompting by the auditors' representatives and apropos of nothing—coordinated their comments to these two outside auditors to maximize their defamation of Solomon. Collectively, Defendants Kocolowski and Stephens proceeded to make a series of baseless, patently defamatory statements about Solomon, including that Solomon:

- is operating a criminal "Ponzi Scheme";

- is "thinly capitalized";

- makes loans that cannot be "repaid";

- would "fall apart" if Mr. Crozier ever departed from Solomon;

- makes "bad loans"; and

- uses lines of credit to "prop up" the "bad loans" it purportedly makes.

38.     Before making his defamatory statements alleging, among other things, that Solomon is financially unsound to the point that it is operating as a criminal scheme, Defendant Stephens physically turned over his nametag (the auditor's representative, however, already knew who he was and that he represented CFR at the conference).

39.     Immediately after making their defamatory statements to Solomon's independent auditor, either or both Defendant Kocolowski and Defendant Stephens approached Phil Pike, the Chief Operating Officer of CDF Capital Inc. ("CDF"), and Nathan Elson, the Executive Director of Marketing and Business Development of CDF, and openly boasted that CFR had just "outed Solomon to their auditors."

40.     There is no basis for Defendants' defamatory statements about Solomon and no cause for their synchronized actions. To the contrary, Solomon at all relevant times, and up to today, has a well-deserved reputation for financial and professional integrity.

41.     As a direct result of Defendants' conduct, Solomon has had to spend additional resources that it would not otherwise expend on its independent auditors who, once freighted with CFR's false allegations, were through an "enhanced audit" required to investigate such allegations and confirm them as unfounded and baseless. Indeed, Solomon's 2021 audit provided that confirmation and more: Solomon's financial position and stability remain exemplary and, in fact, improve annually.

42.     Over the years, Solomon has put CFR's leadership on notice of the disreputable

campaign of disparagement that CFR's management launched and condoned, and that its employees accordingly executed. Solomon has asked CFR's leadership to stop falsely smearing Solomon.

43.     Rather than stop, CFR, as outlined above, escalated its defamation, including by approaching Solomon's auditor and accusing Solomon of criminal conduct – operating a "Ponzi Scheme." CFR, therefore, has forced Solomon's hand and has, through its unlawful and unethical conduct, brought this lawsuit upon itself.

### IV.     CLAIM FOR RELIEF: DEFAMATION

44.     Solomon incorporates herein the preceding allegations in this Complaint.

45.     Defendants made false and defamatory statements concerning Solomon. CFR made such statements through its agents and representatives, Defendant Kocolowski and Defendant Stephens, and as part of an unethical and unlawful effort to improperly gain a business advantage over Solomon. These defamatory statements were false, and they exposed Solomon to public scorn, contempt, and ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, Solomon.

46.     Defendant Kocolowski and Defendant Stephens were acting within the scope of their roles as agents and representatives of CFR when they made their false and defamatory statements.

47.     Defendants' false and defamatory statements include, but are not limited to, the statements summarized in paragraph 37 above, including that Solomon is operating a criminal "Ponzi Scheme."

48.    Defendants made an unprivileged publication of their statements to third parties, including, but not limited to, Solomon's independent auditor.

49.    In making their false and defamatory statements, Defendants were at least negligent.

50.    Defendants, in making their statements, acted with actual malice, and had actual knowledge that their statements were false, or they acted with reckless disregard for the truth of their statements.

51.    Defendants' defamatory statements falsely accused Solomon of criminal activity; Defendants' defamatory statements reflect unfavorably on Solomon's business reputation and business integrity.

52.    Defendants' false and defamatory statements constitute defamation *per se. See generally Finley Alexander Wealth Mgmt., LLC v. M&O Mktg., Inc.*, No. GJH-19-1312, 2021 WL 1215769, at *13 (D. Md. Mar. 31, 2021) ("'[A] statement which disparages the business reputation of a plaintiff is one of the categories traditionally considered to be defamation *per se*' as is a '[s]tatement[ ] imputing criminal behavior[.]'"); *see also Indep. Newspapers, Inc. v. Brodie*, 407 Md. 415 (Md. 2009) (holding that a statement is defamatory *per se* "[w]here the words themselves impute the defamatory character"); *Smith v. Danielczyk*, 400 Md. 98, 115, 928 A.2d 795, 805 (2007) ("Words that falsely impute criminal conduct to a plaintiff are defamatory.").

53.    Defendants' false and facially defamatory statements have caused harm to Solomon. This harm includes, but is not limited to, significant reputational harm, in an amount to be determined at trial, and the increased audit costs Solomon has incurred as a direct result of Defendants' false accusations.

## V.     PRAYER FOR RELIEF

Solomon requests that the Court enter judgment in its favor and against Defendants, including the following:

       a.     damages, including general, actual, and punitive damages;

       b.     costs;

       c.     pre-judgment interest and post judgment interest; and

       d.     such other relief as is just and proper.

## VI.     JURY DEMAND

Solomon demands a trial by jury.

DATED this 22nd day of April, 2022     Respectfully submitted,

**PERKINS COIE LLP**

By: */s/ John K. Roche*
    John K. Roche, USDC-MD Bar No. 17531
    JRoche@perkinscoie.com
    700 13th Street, NW
    Suite 800
    Washington, D.C. 20005-3960
    Telephone: 202.434.1627
    Facsimile: 202.654.6211

    T. Markus Funk (*pro hac vice* pending)
    MFunk@perkinscoie.com
    Daniel Graham (*pro hac vice* pending)
    DGraham@perkinscoie.com
    Sean B. Solis (*pro hac vice* pending)
    SSolis@perkinscoie.com
    1900 Sixteenth Street, Suite 1400
    Denver, CO  80202-5255
    Telephone:  303.291.2300
    Facsimile:  303.291.2400

    **Attorneys for Plaintiff,**
    **The Solomon Foundation**