UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| **THE SOLOMON FOUNDATION,**<br><br>      Plaintiff<br><br>v.<br><br>**CHRISTIAN FINANCIAL RESOURCES, INC., ET AL.**<br><br>      Defendants | **Case No.  1:22-cv-00993-JRR** |

## DEFENDANTS, CHRISTIAN FINANCIAL RESOURCES, INC., MICHAEL KOCOLOWSKI AND TIMOTHY STEPHENS' MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants, Christian Financial Resources, Inc. ("CFR"), Timothy Stephens, and Michael Kocolowski by and through undersigned counsel, hereby submit this Memorandum of Law in support of their Motion to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), as to Plaintiff's claim for Defamation contained within the Complaint.

## INTRODUCTION

This matter arises out of Plaintiff, The Solomon Foundation ("Solomon") allegations of alleged defamatory statements made by CFR's employees, Stephens and Kocolowski, (collectively the "Individual Defendants") during the annual Denominational Investors and Loan Administrators ("DILA") conference in Baltimore, Maryland. Plaintiff has asserted a single cause of action for Defamation against all Defendants. In furtherance of its claim for Defamation, Plaintiff has failed to adequately plead a claim against each Defendant upon which relief may be granted. Specifically, with regard to the Individual Defendants, Plaintiff fails to identify the alleged statements made by each respective and as such, the allegations are insufficient to establish that

either Defendant published a defamatory statement. With regard to all Defendants, Plaintiff's Complaint as to certain alleged defamatory statements must be dismissed as the statements are not actionable as a matter of law, as they include imprecise, vague language or are otherwise opinions. Additionally, with regard to all Defendants, Plaintiff's Complaint fails to allege sufficient facts to establish either a Negligent statement or a statement published with Actual Malice. Lastly, even if the Complaint was sufficiently plead and contained defamatory statements, Defendants' alleged statements within the Complaint are privileged and Plaintiff has not plead sufficient facts to establish Defendants' abuse of said privilege to overcome its burden of proof.

### **FACTS[1]**

Plaintiff is a Church Extension Fund based in Colorado, whose business practice includes raising funds from investors and lending said funds to Christian-based churches for land acquisitions, construction projects, and refinancing. Compl. ⁋ 1. CFR is also a Church Extension Fund and also lends funds to churches within the same affiliation as Solomon. Compl. ⁋ 2. Solomon was formed by the Chief Executive Officer, Doug Crozier in December, 2010. Compl. ⁋⁋17, 18. Prior to forming Solomon, Mr. Crozier and CFR's Chief Executive Officer, Darren Key, maintained a working relationship. Compl. ⁋ 24. Shortly after forming Solomon, Plaintiff alleges CFR engaged in a practice of making defamatory statements about Solomon, in which Solomon has made repeated requests to CFR to discontinue its disparaging comments. Compl[2]. ⁋ 26, 27.

In September, 2021 employees of CFR and Solomon attended the annual DILA conference in Baltimore, Maryland. Compl. ⁋ 4. The mission of the 2021 DILA conference was to "help maximize the effectiveness of not-for-profit entities organized to provide loans to various affiliated

---

[1] For purposes of this Motion only, Defendant accepts all facts alleged within the Complaint as true.

[2] There are no specific allegations in the Compliant about CFR's "practice" of making defamatory statements, the content of any specific statement, or specific requests from Solomon to cease engaging in defamatory conduct.

churches and related religious organizations within their Denominations . . .". Compl. ⁋ 28.  While at the conference, Solomon alleges that Defendants Stephens, former CFR Chief Development Officer and Kocolowski, CFR's Chief Stewardship Officer and former Chief Operating Officer, coordinated and targeted Solomon's independent auditors and made defamatory statements to both unnamed individuals. Compl. ⁋⁋ 30-32. Specifically, Defendants Stephens and Kucolowski "collectively" made the following six statements to the unnamed auditors: (1) Solomon is operating a "Ponzi-Scheme"; (2) Solomon is "thinly capitalized"; (3) Solomon makes loans that cannot be "repaid"; (4) Solomon would "fall apart" if Mr. Crozier ever departed from Solomon; (5) Solomon makes "bad loans" and (6) Solomon uses lines of credit to "prop up" the "bad loans" it purportedly makes. Solomon further alleges these statements were made with actual malice or in the alternative, were negligent. Compl. ⁋⁋49-50. After making these statements, "either or both" Defendant Kocolowksi and Defendant Stephens approached representative of CDF Capital Inc. and boasted about outing Solomon to their auditors. Compl. ⁋39.

Following these statements, Plaintiff alleges it was required to spend additional resources on an "enhanced audit" conducted by its independent auditors. Compl. ⁋ 41. The results of the audit allegedly provided confirmation that Solomon's financials were stable. *Id.*  Additionally, Solomon claims "significant reputational harm, in an amount to be determined at trial". Compl. ⁋ 53.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss for failure to state a claim "tests the legal sufficiency of a complaint" and "should be granted unless the complaint 'states a plausible claim for relief'". *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017). In its determination, the court must consider all well-pled allegations in a complaint as true, *see Albright v. Oliver*, 510 U.S. 266, 268, 127 L. Ed.

3

2d 114, 114 S. Ct. 807 (1994), and must construe all factual allegations in the light most favorable

to the plaintiff. *See Harrison v. Westinghouse Savannah River Co*., 176 F.3d 776, 783 (4th Cir.

1999). The Court need not, however, accept unsupported legal conclusions, *District 28, United*

*Mine Workers of Am., Inc. v. Wellmore Coal Corp*., 609 F.2d 1083, 1085 (4th Cir. 1979), or legal

conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286, 92 L. Ed. 2d

209, 106 S. Ct. 2932 (1986).

The United States Supreme Court has described two rules that guide courts' application of

Federal Rule of Civil Procedure 8. First, the complaint must contain factual allegations supporting

the claim or claims alleged, as the court need not consider legal conclusions to be true—

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,

do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, the complaint must state a

"plausible" claim for relief. *Id.* at 679. "[W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged—but it has not

'show[n]'—'that the pleader is entitled to relief.'" *Id.*

## **ARGUMENT**

1. **Plaintiff's Complaint Fails to Identify the Specific Alleged Statements Made by the Individual Defendants and Thus Fails to Set Forth a Viable Cause of Action for Defamation as to The Individual Defendants.**

To successfully plead a claim for Defamation, Plaintiff must allege (1) the Defendant made

a defamatory communication to a third person; (2) the statement was false; (3) the Defendant was

at fault in communicating the statement; and (4) the Plaintiff suffered harm. *Samuels v.*

*Tschechelin*, 135 Md. App. 483 (2000). Specifically, "to satisfy federal pleading requirements, a

plaintiff must specifically allege each defamatory statement." *Doe v. Salisbury Univ*., 123 F. Supp.

3d 748, 758 (D. Md. 2015); *see also Gainsburg v. Steben & Co*., 838 F. Supp. 2d 339 (D. Md.

2011) (every "alleged defamatory statement constitutes 'a separate instance of defamation,' which 'a plaintiff must specifically allege'"); *see also Brown v. Ferguson Enters., Inc*., Civ. No. CCB-12-1817, 2012 U.S. Dist. LEXIS 174991 at *8 (D. Md. Dec. 11, 2012) (finding that a plaintiff's allegations could not plausibly support a claim for defamation where they "contain[ed] no specific description of the content of the alleged statements, nor when and how they were communicated.) Additionally, although a plaintiff is not required to plead a defamation claim under the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, "the pleadings in a defamation claim must be sufficiently detailed to enable a defendant to appropriately respond." *Estate of Jones v. St. Thomas More Nursing & Rehab Ctr*., 2009 U.S. Dist. LEXIS 91045 *1, *7 (2009).

Here, while the Complaint contains allegations of the specific statements made during the DILA conference, there are no facts to distinguish which statements were made by Stephens and which were made by Kocolowski. For example, Plaintiff alleges that both Individual Defendants targeted two Solomon auditors and "collectively" made the following six statements: (1) Solomon is operating a "Ponzi-Scheme"; (2) Solomon is "thinly capitalized"; (3) Solomon makes loans that cannot be "repaid"; (4) Solomon would "fall apart" if Mr. Crozier ever departed from Solomon; (5) Solomon makes "bad loans" and (6) Solomon uses lines of credit to "prop up" the "bad loans" it purportedly makes. Compl. ⁋ 37 (emphasis added). However, Plaintiff fails to allege which Defendant made the specific statements. Without such baseline allegations, Plainitff has failed to satisfy the federal pleading standards as each defamatory statement is not specifically alleged. *Doe,* 123 F. Supp. 3d 748, 758 (D. Md. 2015). Additionally, without such allegations, the Individual Defendants cannot appropriately respond to the Complaint, as there are no specific allegations as to each respective Individual Defendant to warrant further analysis of the remaining elements of

Defamation, (i.e. the element of "fault" cannot be analyzed without first alleging the publisher of the statement.) The lack of such allegations necessarily falls short of the requisite pleading standards, as the Complaint does not state a "plausible" claim for relief as to the Individual Defendants. *Iqbal*, 556 U.S. 662, 678 (2009). Moreover, the alleged facts do not permit this Court to infer more than the "mere possibility of misconduct" as to each Individual Defendant and thus does not show Plaintiff's entitlement to relief from each respective Defendant. *Id*.

As the Complaint fails to identify the specific publishers of the alleged defamatory statements, Plaintiff's Complaint must be dismissed as to the Individual Defendants for failure to state a claim upon which relief may be granted.

## 2. Plaintiff's Claim against all Defendants Fail as Certain Alleged Statements are Not Actionable as a Matter of Law.

A defamatory communication is a statement "tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule to a third person who reasonably recognized the statement as being defamatory." *Shapiro v Massengill*, 105 Md. App. 743, 773 (1995). However, in a defamation action involving a corporate plaintiff, "it is only with respect to its credit, property, or business that a corporation can be injured by a defamatory statement. *Novick v. Hearst Corp.*, 278 F. Supp 277, 279 (D. Md. 1968).  In deciding whether a communication is defamatory - in and of itself or in light of extrinsic facts - requires looking at the statement as a whole. *Batson* v *Shiflett*, 325 Md. 684, 726 (1992). "[W]ords have different meanings depending on the context in which they are used and a meaning not warranted by the whole publication should not be imputed." *Id*.

The burden of establishing the falsity of the alleged defamatory statement rests with the Plaintiff. *Id*. at 726. During the pleading stage, a plaintiff must allege that the statement is false and must further allege sufficient facts enough that "a jury could reasonably find that the statements  . . . conveyed false representations of fact." *Id*. A "false" statement is one "that is not

substantially correct." *Id*. However, if a statement "cannot 'reasonably [be] interpreted as stating actual facts'" then it merits protection. *Milkovich v. Lorain Journal Co*., 497 U.S. 1, 111 L. Ed. 2d 1, 110 S. Ct. 2695 (1990).

As such, when the truthfulness of a statement cannot be verified due to the use of imprecise or subjective terms, the statement is not defamatory as a matter of law. *Biospherics Inc. v. Forbes. Inc*., 989 F. Supp. 748, 751-52 (D. Md. 1997), aff'd, 151 F.3d 180 (4th Cir 1998); *Potomac Valve & Fitting, Inc. v. Crawford Fitting Co*., 829 F.2d 1280 (4th Cir. 1987)("If the defendant's words cannot be described as either true or false, they are not actionable."); *see also*, *Milkovich,* 497 U.S. at 20.   For example, in *Biopsherics Inc. v. Forbes. Inc*., the Fourth Circuit Court of Appeals affirmed the dismissal of plaintiff's Complaint for defamation, in part, due to the unverifiable language used in the alleged defamatory statement. Specifically, the Court held that the following statements "Biosphercis shares are <u>easy</u> to borrow" and "the few independent analysts who follow the company think its stock is <u>worth</u> $2 on current business" were not easily verifiable considering the imprecise and casual language of the terms "easy" and "worth". *Id*. (emphasis added). The statement is thus, not actionable, when the statement cannot be objectively verifiable through the use of imprecise terms. *Id*. at 186; *see also Levinsky's, Inc. v. Wal-Mart Stores, Inc*., 127 F.3d 122, 129 (1st Cir. 1997) ("The vaguer a term, or the more meanings it reasonably can convey, the less likely it is to be actionable."). Similarly, in *Samuels*, 135 Md. App. 483, 554 (2000) the Court of Special appeals explained that the phrase "poor performance", when describing an employee's job performance, was not a precise definition and thus the interpretation of the phrase was based on subjective standards, that could not be objectively verified. *Id*. at 554. ("As we see it, however, the concept of "poor performance" does not lend itself to a mathematically precise definition.")

Plaintiff alleges similarly vague and imprecise statements in its Complaint including: (1) Solomon is "thinly capitalized" and (2) Solomon makes "bad loans". (Emphasis added).  The terms "thinly capitalized" and "bad" loans cannot be independently verified as they are vague, imprecise and left up to subjective interpretation. For example, a "bad loan" could conceivably imply numerous meanings, such as a borrower's inability to pay back a loan. Without any additional context, it could have various interpretations, none of which imply actions taken by the lender in issuing or servicing the loan. Additionally, "thinly capitalized" is also vague and left up to subjective interpretation, as the statement itself cannot be described as either true or false.

Additionally, the statements would otherwise not be actionable if it is clear that a reasonable reader or listener would recognize its "weakly substantiated or subjective character" as opinion and "discount it accordingly." *Id.* An opinion may constitute actionable defamation, only if the opinion can be reasonably interpreted to declare or imply untrue facts. *Biopsherics Inc., 151 F. 3d at 184; Milkovich, 497 U.S. at 20.* When a speaker plainly expresses "a subjective view, an interpretation, a theory, conjecture or surmise, rather than [a] claim to be in possession of objectively verifiable [false] facts, the statement is not actionable*." Biospherics, Inc*., 151 F.3d 180, 186 (1998). In determining whether a statement could be reasonably interpreted as an assertion of fact, the Supreme Court in *Milkovich* looked to the language used – whether it was "loose, figurative, or hyperbolic language which would negate the impression that the [speaker]" was stating fact – and the context and "general tenor of the [statement]." 497 U.S. at 21. Several courts have applied the test provided in *Milkovich* in analyzing non-actionable opinions. *Jenkins v. Snyder*, 2001 U.S. Dist. LEXIS 26921 *10 (E.D. Va. 2001)(holding the term "crappy" when describing a baseball field's condition was subjective opinion); *United States ex rel. Guo v. Nat'l Endowment for Democracy*, 2022 U.S. Dist. LEXIS 29968 *32 (D. D.C. Feb. 18, 2022)(Statements

that plaintiff was a "betrayer" and "squealer" were hyperbolic language which negate the impression of a factual statement); *Carey v. Throwe*, 957 F.3d 468, 484 (4th Cir. 2020)(Defendant's claim that Plaintiff had "the integrity of a lifer on death row" did not contain any assertion of objective fact and was thus non-actionable opinion.

Even if, assuming *arguendo*, that the truthfulness of the statements (1) Solomon is "thinly capitalized" and (2) Solomon "makes bad loans" could be verified, they are nevertheless not actionable because they express a subjective view of CFR and cannot reasonably be interpreted as stating actual facts. Indeed, there are no actual facts alleged within the statements to provide context for the opinion. The terms "bad" and "thinly" are loose, figurative, and synonymous with the term "crappy", in that they do not imply the presence of objectively verifiable facts.

Similarly, the following statements alleged in the Complaint fall within the same category of opinion: (3) Solomon makes loans that cannot be "repaid" and (4) Solomon would "fall apart" if Mr. Crozier ever departed from Solomon. These two statements mirror the previous statements discussed *supra*, as they are not accompanied by objectively verifiable false facts (or any facts) and express the subjective view of CFR. Additionally, neither of these statements could be verifiable. For example, the phrase Solomon makes loans that cannot be "repaid" is vague and implies numerous meanings, similar to "bad loans". The reasoning for why said loans cannot be "repaid" is left up to interpretation, as once again, the phrase could refer to the borrower's inability to repay the loan. Similarly, the phrase Solomon would "fall apart" if Mr. Crozier ever departed from Solomon, contains no factual statements whatsoever, or otherwise implications of false facts, that can be objectively verified by the recipient. Moreover, any reasonable listener would recognize the "weakly substantiated or subjective character" of this statement and conclude it is an opinion and not an assertion of fact.

As the statements referenced *supra* contain imprecise language or are otherwise statements of opinions, neither of which constitute actionable defamation, Plaintiff's claim for defamation based on said statements must be dismissed as a matter of law.

3. **Plaintiff's Complaint must be Dismissed as it Fails to Set Forth Sufficient Facts to Establish Either a Negligent Statement or Actual Malice**

Even if the certain statements raised *supra*, were defamatory and false, Plaintiff has failed to plead sufficient facts to establish the statements were made negligently or with actual malice to establish Defendants' legal fault in publishing the statements.

To satisfy their burden of proving fault, Plaintiff, at a minimum, must establish the party making the false statement acted negligently. *Doe*, 274 F. Supp. 3d 355, 366 (D. Md. 2017). For the purposes of establishing a prima facie case of defamation, "fault" may be "based either on negligence <u>or</u> constitutional malice." *Batson*, 325 Md. at 728 (1992). (Emphasis added). Negligence is defined as

> "any conduct, except conduct recklessly disregardful of an interest of others, which falls below the standard established by law for protection of other against unreasonable risk of harm. It does not exist apart from the facts and circumstances upon which is it predicated, necessarily involves a breach of some duty owned by a defendant to the plaintiff and is inconsistent with the exercise of ordinary care".

*Mayor and City Council of Baltimore v. Hart*, 395 Md. 394, 410-11 (2006).

In the context of a defamation claim, negligence is described as follows:

> Negligence is conduct that creates an unreasonable risk of harm. The standard of conduct is that of a reasonable person under like circumstances. Insofar as the truth or falsity of the defamatory statement is concerned, the question of negligence has sometimes been expressed in terms of the defendant's state of mind by asking whether he had reasonable grounds for believing that the communication was true. Putting the question in terms of conduct is to ask whether the defendant acted reasonably in checking on the truth or falsity or defamatory character of the communication before publishing it.

*Brown v Bd of Educ. of Prince George's Cty., Maryland*, No. CV DLB-20-2632, 2022 WL 888424 (D. Md. Mar. 25, 2022); *quoting* Restatement (Second) of Torts§ 580B (1977).

Here, Plaintiff's Complaint conclusory alleges negligence and actual malice, however the Complaint does not contain <u>any</u> factual allegations to support either theory. For example, the Complaint contains bald assertions of CFR's "pattern and practice of making defamatory statements about Solomon", without identifying the statements or providing any further detail or context. Compl. ¶26. In connection with the statements specifically alleged at the DILA conference, the Complaint simply states that Defendants "made false and defamatory statements concerning Solomon" and did so to "improperly gain a business advantage". Compl. ¶ 45. The Complaint then concludes "[i]n making their false and defamatory statements, Defendants were at least negligent." Compl. ¶ 49.  There are no factual allegations in the Complaint establishing a duty owed to Solomon from CRF to establish the elements of negligence. Additionally, even if the Complaint sufficiently alleged facts to establish a duty owed, the Complaint is devoid of any facts to establish the standard of care owed to Solomon. As duty and standard of care are necessary elements in a negligence analysis, Plaintiffs must plead specific factual allegations to satisfy this claim. *Pendleton v. State*, 398 Md. 447, 460 (2007)(A negligence action requires the plaintiff to plead facts in support of (1) a duty owed to plaintiff, (2) breach, (3) actual injury and (4) proximate cause.) The conduct alleged must fall below the relevant standard. However, the Complaint is devoid of the required facts to identify or define the applicable standard, or that the conduct at issue fell below it.

Additionally, the conclusory allegations that "Defendants were at least negligent" when making the alleged defamatory statement are insufficient to establish  an inference that Defendants did not have reasonable grounds for believing the statements to be true **or** that Defendants acted unreasonably by failing to discern their veracity. Restatement (Second) of Torts§ 580B (1977); *see Brown*, No. CV DLB-20-2632, 2022 WL 888424 (D. Md. 2022)("The District Court dismissed

Plaintiff's Complaint for failure to plead any facts that, at the time the statements were made, Defendant did not have reasonable grounds for believing statements were true or acted unreasonably by failing to discern their veracity). As there are no facts to support Defendants' state of mind when making the alleged defamatory statements, the Complaint is insufficiently plead to satisfy the element of "fault" based on a theory of negligence.

Additionally, the Compliant fails to allege any facts that establish CFR's actual malice in publishing the statements. A statement is made with actual malice when it is "made 'with knowledge that it [is] false or with reckless disregard of whether it [is] false or not." *Batson*, 325 Md. at 728 (1992) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). To adequality plead actual malice in a defamation claim, a plaintiff must do more than merely recite a legal standard. *Brown,* No. CV DLB-20-2632, 2022 WL 888424 (D. Md. 2022). A defamation suit may be dismissed for failure to state a claim where the plaintiff has not **pled facts sufficient to give rise to a reasonable inference of actual malice**. *Fairfax v. CBS Corp*., 2 F.4th 286, 293 (4th Cir. 2021). (Emphasis added).

In support of their claim for actual malice, Plaintiff simply alleges that "Defendants . . . acted with actual malice, and had actual knowledge that their statements were false, or they acted with reckless disregard for the truth of their statement". Compl. ⁋ 50. This is a conclusory allegation. There are no facts alleged in the Complaint that "give rise to a reasonable inference of actual malice". In fact, there are no allegations whatsoever, to establish CFR's actual knowledge of falsity or that the statements were made with reckless disregard for the truth. Plaintiff is required to plead such facts to establish that Defendants knew, at the time the statements were published, that such statement were false **or** that Defendants acted with reckless disregard as to the statements' veracity. A mere recitation of the law is insufficient to satisfy the requisite pleading

standard and as such, failure to plead such facts to support the element of "fault" warrants dismissal.

4.   **Plaintiff's Complaint Must be Dismissed Because the Alleged Statements are Protected by the Common-Interest Privilege.**

Assuming, *arguendo*, that the statements alleged in the Complaint were defamatory as a matter of law and the Complaint alleged sufficient facts to establish negligence or actual malice, Plaintiff's Complaint must nevertheless be dismissed because the statements alleged are protected by the Common-Interest Privilege.

If a plaintiff is able to demonstrate that a statement was defamatory, the defendant has the burden of proving that the statement was privileged. *Gohari v. Darvish*, 363 Md. 42, 74 (2001) If a privilege has been established, the plaintiff must show the defendant abused the privilege, by alleging facts to support malice. *Id*. at 74. In a defamation action, malice is defined as a person's actual knowledge that his or her statement is false, coupled with his or her intent to deceive another by means of that statement. *Seley-Radtke,* 450 Md. at 495.

A "conditional" or "qualified" privilege is a "circumstance in which a person will not be held liable for a defamatory statement because the person is acting in furtherance of some interest of social important, which is entitled to protection. *Woodruff v. Trepel*, 125 Md. App. 381, 391 (1999). The "common interest" privilege recognizes the broad value in "promoting free exchange of relevant information among those engaged in a common enterprise or activity and to permit them to make appropriate internal communications and share consultations without fear of suit." *Shirley v. Heckman,* 214 Md. App. 34, 43 (2012). There is no rigid definition of "common interest" *Id*.; *see also Hanrahan v. Kelly*, 269 Md. 21, 28 (1973)(explaining that the common-interest privilege is broad and may apply to "an infinite variety of factual circumstances"). An occasion is conditionally privileged when the circumstances are such as to lead any one of several persons

having a common interest in a particular subject matter correctly or reasonably to believe that facts exist that another sharing such common interest is entitled to know. *Carter v. Aramark Sports & Entm't Servs.*, 153 Md. App. 210, 278 (2003).

A common interest may be "found among members of identifiable groups in which members **share similar goals or values or cooperate in a single endeavor**" and "when the circumstances are such to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know." *Gohari*, 363 Md. at 57–58 (quoting *Hanrahan*, 269 Md. at 28)(emphasis added). This includes "interests in property, business and professional dealings" and can "inhere in business dealings between the publisher and the recipient." *Hanrahan*, 269 Md. at 28 n. 2 (citing *Deckelman v Lake*, 149 Md. 533; 131 A. 762 (1926)). As stated *supra*, Maryland Courts have held that the common-interest privilege applies to a variety of relationships. *Shirley*, 214 Md. App. at 44 (holding that members of a baseball league and the members of the board of the league fall within the privilege); *Gohari*, 363 Md. at 61–62 (holding that a franchisee-franchisor relationship falls within this qualified privilege); *Happy 40, Inc. v Miller*, 63 Md. App. 24; 491 A.2d 1210 (1985) (statements made to fellow employees are covered by the common-interest privilege).

In *Carter,* 153 Md. App. 210 (2003), the Court determined that the common-interest privilege applied when a contractor made statements to the plaintiff's employer regarding the plaintiff engaging in criminal activity at work. *Id*. at 240. Carter was employed by the Baltimore Orioles, while Aramark supplied concession services for the stadium. *Id*. at 221. Aramark accused Carter of running a scheme of reusing disposable yogurt cups and published the statements to other employees working at Oriole Park. *Id*. The Court concluded that the common-interest privilege

should apply to the statements alleging criminal activity and stated "there is no question that because one of the employees in the alleged scheme was an employee of the Orioles, and supposed events took place at Oriole Park at Camden Yards, 'the circumstances are such as to lead to the reasonable belief that the third person's interest was in danger." *Id*. at 239 (*citing Gohari*, 363 Md. at 59).

Here, the alleged statements were published to Solomon's "independent auditors" at the annual Denominational Investors and Loan Administrator's conference, where members of various Church Extension Funds, banks, financial consultants and auditors from across the country gather to discuss their shared interest in promoting the financial growth of certain Christian-based churches. The conference is an avenue for persons with the same goals and values to gather and discuss best practices within their field. As such, an auditor of Solomon undoubtably has a shared common interest in discussing the potential financial troubles of its client and, as alleged in the Complaint, the "fourth-largest Church Extension Fund" in the entire United States. Compl. ₱17. More importantly, all of the Church Extension Funds and their agents have a shared interest in the same "business" and "professional dealings", specifically funding churches within their denomination, and statements suggesting potential criminal activity within one company necessarily effects the future of the churches they all service. As such, an auditor of Solomon is entitled to know the information being published as alleged in the Complaint, because such information necessarily effects their common interest with CFR in ensuring the financial stability and overall reputation of the churches they fund.

As there is a common interest between CFR and Solomon's auditors in financially serving churches throughout the country, the privilege applies, and thus to survive a motion to dismiss, Solomon must allege CFR abused the privilege, by specifically pleading facts to support of finding

of malice. *Piscatelli*, 424 Md. at 308.("Abuse of a conditional privilege is usually a question for the fact-finder, but a court can decide the question as a matter of law if the plaintiff fails to allege or prove facts that would support a finding of abuse"). In a defamation claim, malice requires a showing of (1) actual knowledge of the statement's falsity and (2) intent to deceive the third-part by means of the statement. *Seley-Radtke*, 450 Md. at 502.

As argued *supra*, the Complaint is completely devoid of <u>any facts</u> to establish actual malice on behalf of CFR. The only allegations to even suggest malice are a blanket, conclusory regurgitation of the law, without pleading any factual support. Compl. 50 ("Defendants, in making their statements, acted with actual malice . . ."). Indeed, there are no facts alleged to establish (1) CFR's <u>actual knowledge</u> that the statements were false and (2) CFR's <u>intent</u> to deceive another by means of the statements. *Seley-Radtke*, 450 Md. at 502. (Emphasis added). Without such allegations, plaintiff cannot overcome its burden to establish abuse on behalf of CFR and as such, the Common Interest Privilege protects all statements alleged in the Complaint. Accordingly, the Complaint must be dismissed as a matter of law.

## <u>CONCLUSION</u>

For the reasons set forth herein and contained within Defendants' Motion to Dismiss filed contemporaneously, Defendants respectfully requests this Court enter an Order dismissing Plaintiff's Complaint with prejudice.

Respectfully submitted,


/s/Eric M. Rigatuso                                        /s/Gillian M. Felix
Eric M. Rigatuso (Bar Number 27605)         Gillian M. Felix (Bar Number 21717)
ECCLESTON & WOLF, P.C.                          ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center               Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor                     7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378                            Hanover, MD 21076-1378

(410) 752-7474 (phone)                    (410) 752-7474
(410) 752-0611 (fax)                      (410) 752-0611 (fax)
E-mail: rigatuso@ewmd.com                 E-mail: felix@ewmd.com
*Attorney for Defendants*                 *Attorney for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 31st day of May, 2022, copies the foregoing

Memorandum of Law in support of Defendants' Motion to Dismiss was served electronically via

the Court's electronic service to:

> John K. Roche, Esq.
> 700 13th St., NW
> Suite 800
> Washington, DC 20005
> Jroche@perkinscoie.com
> Counsel for Plaintiff
>
>
> T. Markus Funk, Esq.
> Daniel Graham, Esq.
> Sean B. Solis, Esq.
> 1900 Sixteenth Street, Suite 1400
> Denver, CO 80202
> Mfunk@perkinscoie.com
> Dgraham@perkinscoie.com
> Ssolis@perkinscoie.com
> Counsel for Plaintiff
>
>
> */s/ Gillian Felix*
> Gillian Felix Bar Number: 21717

17