IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THE SOLOMON FOUNDATION, | * | |
| Plaintiff, | * | |
| | * | Case No. 1:22-cv-00993-JRR |
| v. | * | |
| CHRISTIAN FINANCIAL RESOURCES, INC., *et al.* | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

# MEMORANDUM OPINION

This matter comes before the court on Defendants Christian Financial Resources, Inc., Michael Kocolowski, and Timothy Stephens' (collectively the "Defendants") Motion to Dismiss Plaintiff's Amended Complaint. (ECF No. 36; the "Motion.") The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2021). For the reasons set forth herein, the Motion will be denied.

## BACKGROUND[1]

Plaintiff The Solomon Foundation ("Solomon") is a nonprofit Church Extension Fund[2] based in Parker, Colorado. (ECF No. 35 ¶ 1; the "Amended Complaint.") Defendant Christian Financial Resources ("CFR") is a nonprofit Church Extension Fund based in Lake Mary, Florida. *Id.* ¶ 2. Defendant Michael Kocolowski is CFR's Chief Stewardship Officer and former Chief Operating Officer. *Id.* ¶ 13. Defendant Timothy Stephens is the former Chief Development

---

[1] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Amended Complaint.
[2] Church Extension Funds are involved in the business of raising funds for investors, issuing debt securities, and lending funds to churches for land acquisition, construction projects, and refinancing. (ECF No. 35 ¶¶ 1, 20-21.)

Officer of CFR. *Id.* ¶ 14. This case arises from Defendants' allegedly defamatory statements regarding Plaintiff's financial condition and business generally.

Prior to the formation of Solomon, Douglas Crozier, Solomon's CEO, and Darren Key, CFR's CEO, developed a business relationship. (ECF No. 35 ¶¶ 19, 25-26.) Key engaged Crozier as a consultant to help CFR expand its business outside of Florida. *Id.* ¶ 26. After working as a consultant for CFR, Crozier formed Solomon. *Id.* ¶ 27. A few years after the formation of Solomon, CFR began a pattern of unfairly disparaging Solomon to third parties, which "appears to be spurred by its desire to take business from Solomon." *Id.* ¶¶ 27-28.

Plaintiff alleges that CFR attempted to convince Solomon's clients to move to CFR while also encouraging CFR's dissatisfied clients to stay with CFR rather than leave for Solomon. (ECF No. 35 ¶ 28.) For example, Plaintiff alleges that in June of 2017, Ekklesia Christian Church advised CFR of its intention to take its business to Solomon. *Id.* ¶ 29. In response, Stephens, as an agent of CFR, contacted Ekklesia's lead pastor in an effort to keep its business and told the pastor that Solomon had "multiple loans in default" and that Stephens had "seen 10-15 churches like yours just get decimated by monthly payments way too high." *Id.* ¶ 30. Subsequently, a different CFR employee contacted Ekklesia's lead pastor and advised him not do business with Solomon because Solomon would "not be in business long" because "21% of [Solomon's] loans are bad loans." *Id.* ¶ 31.

Plaintiff alleges that these statements were verifiably false, as Plaintiff's audits and offering circulars reported low levels of delinquent loans, and the information was at all times publicly available – a fact known by Defendants. (ECF No. 35 ¶ 32.) Plaintiff alleges that once it learned of these defamatory statements, Crozier emailed Key to complain that CFR's employees were making false, harmful statements to potential Solomon clients. *Id.* ¶ 34. Key acknowledged the

statements and stated that he would talk with his team about the boundaries of discussing competitors. *Id.* ¶ 35. Despite informing Key about the statements, CFR's false disparaging statements continued in 2018 with a phone call between Kocolowski and Generations Christian Church, during which Kocolowski questioned Solomon's stability, described Solomon as a "house of cards," and claimed it was engaged in "bad business dealings." *Id.* ¶¶ 38-39. In response, Crozier "transmitted a copy of Solomon's offering circular, which includes Solomon's audited financial statements, directly to Mr. Key." *Id.* ¶ 44. Crozier continued to reach out to Key to ensure that the false statements stopped and made it clear to Key that the statements were "baseless." *Id.* ¶ 45.

Plaintiff alleges that Defendants continued their defamatory conduct at the 2021 Denominational Investors & Loan Administrators ("DILA") conference in Baltimore, Maryland. (ECF No. 35 ¶ 48.) Kocolowski and Stephens attended the conference on behalf of CFR. *Id.* ¶ 51. During the conference, Kocolowski and Stephens split up and approached two different representatives of Solomon's outside auditor. *Id.* ¶¶ 53-57. During these conversations, Kocolowski and Stephens communicated that Solomon was "operating a criminal a Ponzi Scheme," described Solomon as "thinly capitalized," and claimed that Solomon made "bad loans" and "loans that cannot be repaid." *Id.* ¶ 57. Kocolowski and Stephens later boasted to other conference attendees that they had just "outed Solomon to their auditors." *Id.* ¶ 59. As a result of Defendants' statements and actions, Solomon alleges harm to its business reputation and financial losses associated with an intensified audit its independent auditor was compelled to perform due to Defendants' defamatory statements made at the DILA conference about Solomon's financial condition and transactions. *Id.* ¶¶ 61, 75, 77.

On April 22, 2022, Plaintiff filed a Complaint, which set forth one count of defamation. (ECF No. 1.) On March 31, 2022, Defendants filed a Motion to Dismiss. (ECF No. 19.) Following a hearing on June 30, 2022, the court granted in part and denied in part the motion.[3] On August 29, 2022, Plaintiff filed an Amended Complaint. In response, Defendants filed the instant Motion.

The Motion asserts that the Amended Complaint fails to allege facts adequate to plead defamation whether viewed as a negligence-based claim or on grounds that Defendants acted with actual malice. Specifically, Defendants argue that the Amended Complaint fails: (1) to articulate any duty owed by Defendants to Solomon – which Defendants contend is required as a matter of law; (2) to support a reasonable inference that Defendants "did not have reasonable grounds for believing the statements were true;" and (3) to support a reasonable inference that "Defendants knew the statements were false and intended to deceive the recipient . . . ." (ECF No. 36-1 at 8-10.) Further, by way of footnote 3, Defendants "incorporate all arguments raised in their Motion to Dismiss . . . filed on May 31, 2022, and all arguments raised during oral argument . . . ." (*Id.* at 6 n.3.) While the court appreciates the purpose of Defendants' protective reference to the record, it is not incumbent upon the court to review the record or transcript of oral argument in search of points, theories or arguments defense counsel may have mentioned or offered previously which are not set forth in the Motion. The court rests on its record; however, the court will address Defendants' affirmative defense of a common-interest privilege (previously raised in the Motion to Dismiss at ECF No. 19), because the Amended Complaint sets forth considerably more amplified facts.

---

[3] The court granted the motion at ECF No. 19 "as to Plaintiff's failure to state a claim by reason of failing to allege Defendants are at fault in making the alleged defamatory statements; and on the basis that the alleged statement that Plaintiff 'would fall apart if Mr. Crozier ever departed from Solomon' is not defamatory." (ECF No. 27.) The motion was denied on all other bases. *Id.*

4

## LEGAL STANDARD

**Federal Rule of Civil Procedure 12(b)(6)**

A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint. It does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244 (citing *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)).

"While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "A complaint that provides no more than 'labels and conclusions,' or 'formulaic recitation of the elements of a cause of action,' is insufficient." *Bourgeois v. Live Nation Ent., Inc.*, 3 F. Supp. 3d 423, 434 (D. Md. 2014) (quoting *Twombly*, 550 U.S. at 555). "The [c]ourt must be able to deduce 'more than the mere possibility of misconduct'; the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief." *Evans v. 7520 Surratts Rd. Operations, LLC*, No. PX-21-1637, 2021 U.S. Dist. LEXIS 221041, at *4 (D. Md. Nov. 16, 2021) (quoting *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015)).

ANALYSIS

"In order to plead, under Maryland law, a defamation claim sufficient to withstand a motion to dismiss, a plaintiff must allege facts establishing four elements: '(1) that the defendant made a defamatory statement to a third person, (2) that the statement was false, (3) that the defendant was legally at fault in making the statement, and (4) that the plaintiff thereby suffered harm.'" *Finley Alexander Wealth Mgmt., LLC v. M&O Mktg.*, No. GJH-19-1312, 2021 U.S. Dist. LEXIS 62926, at *33 (D. Md. Mar. 31, 2021) (quoting *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012) (internal quotation marks omitted)).

I. **Defamatory Statement to a Third Party**

"Under the first element, a defamatory statement is one 'which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person.'" *Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 365-66 (D. Md. 2017) (quoting *Gohari v. Darvish*, 363 Md. 42, 54 (2001)). When dealing with a corporate plaintiff, "[s]ince a corporation has no character to be affected by libel and no feelings to be injured," a defamatory statement against a corporation must "have a tendency to directly affect its credit or property or cause it pecuniary injury." *Biospherics, Inc. v. Forbes, Inc.*, 989 F. Supp. 748, 750-51 (D. Md. 1997) (quoting *Golden N. Airways v. Tanana Publ'g Co.*, 218 F.2d 612, 624 (9th Cir. 1954)).

"To determine whether a publication is defamatory, a question of law for the court, the publication must be read as a whole: '[W]ords have different meanings depending on the context in which they are used and a meaning not warranted by the whole publication should not be imputed.'" *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012) (quoting *Chesapeake Publ'g Corp. v. Williams*, 339 Md. 285, 295 (1995)); *see Rosenberg v. Helinski*, 328 Md. 664, 675 (1992) (finding that the defendant's "statements to the television reporter, taken in the aggregate, were

6

defamatory in nature"). "Maryland law distinguishes between statements that are defamatory *per se* and defamatory *per quod*." *Clayton v. Fairnak*, No. JKB-18-2134, 2018 U.S. Dist. LEXIS 207601, at *4-5 (D. Md. Dec. 10, 2018). "A statement that is defamatory *per se* is one for which the 'words themselves impute the defamatory character,' such that the plaintiff need not plead additional facts demonstrating their defamatory nature." *Doe*, 274 F. Supp. 3d at 365-66 (quoting *Metromedia, Inc. v. Hillman*, 285 Md. 161, 173 (Md. 1979)). "A statement that is defamatory *per quod* is one for which extrinsic facts are necessary to demonstrate 'the defamatory character of the words sued upon.'" *Id.* at 366 (quoting *Metromedia*, 285 Md. at 173). "Whether an alleged statement is *per se* or *per quod* is a question of law for the court."[4] *Samuels v. Tschechtelin*, 135 Md. App. 483, 549 (2000).

Plaintiff alleges that Defendants' statements are defamatory *per se*. (ECF 35 ¶ 76.) The types of statements typically considered defamatory *per se* fall within discrete categories. *See* RESTATEMENT (SECOND) OF TORTS §§ 570 (1977) (explaining that "[o]ne who publishes matter defamatory to another in such a manner as to make the publication a slander is subject to liability to the other although no special harm results if the publication imputes to the other (a) a criminal

---

[4] As discussed in Section III and IV, *infra*, "[t]he significance of whether the defamation is *per se* or *per quod* is intertwined with the issue of fault." *Shapiro v. Massengill*, 105 Md. App. 743, 773 (1995). In *Samuels v. Tschechtelin*, the Maryland Court of Special Appeals instructed:

> "If the statement is *per quod*, then the jury must decide whether the statement does, in fact, carry defamatory meaning." But if the statement is defamatory *per se*, and the defendant was merely negligent in making the false statement, the plaintiff must still prove actual damages. In contrast, when a plaintiff establishes that a statement was defamatory *per se* and, by clear and convincing evidence, demonstrates that it was made with actual malice, a "presumption of harm to reputation . . . arises from the publication of words actionable *per se*. A trier of fact is not constitutionally barred from awarding damages based on that presumption in [an actual] malice case." In other words, if the statement is defamatory *per se*, damages are presumed when a plaintiff can demonstrate actual malice, by clear and convincing evidence, even in the absence of proof of harm.

135 Md. App. 483, 549-50 (2000) (internal citations omitted).

offense, as stated in § 571, or (b) a loathsome disease, as stated in § 572, or (c) matter incompatible with his business, trade, profession, or office, as stated in § 573, or (d) serious sexual misconduct, as stated in § 574"). For example, a "statement which disparages the business reputation of a plaintiff is one of the categories traditionally considered to be defamation *per se*." *S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F. Supp. 2d 837, 843 (D. Md. 2005). Further, accusing someone of criminal behavior is actionable as defamation *per se*. *See Shapiro v. Massengill*, 105 Md. App. 743, 775 (1995) (finding that the defendants' statements that the plaintiff was "evasive, secretive, dishonest, dishonorable, and perhaps even a criminal" were defamatory *per se*).

Here, Plaintiff alleges the following statements are defamatory *per se*:

> During his phone call with Pastor Scott, Defendant Kocolowski, at all times acting as CFR's agent, in a last-ditch attempt to keep Generations' business, made a series of baseless, patently defamatory statements about Solomon. More specifically, Defendant Kocolowski stated that Solomon:
> - was a "house of cards";
> - was "not stable";
> - engaged in "bad business dealings"; and
> - was trying to "steal" Generations' land and buy the church (and that Pastor Scott, by switching to Solomon, was "putting the church in danger")
>
> . . .
>
> In their simultaneous conversations with representatives of Solomon's outside auditor, Defendants Kocolowski and Stephens without any prompting by the auditors' representatives and apropos of nothing—coordinated their comments to these two outside auditors to maximize their defamation of Solomon. Collectively, Defendants Kocolowski and Stephens proceeded to make a series of baseless, patently defamatory statements about Solomon, including that Solomon:
> - is operating a criminal "Ponzi Scheme";
> - is "thinly capitalized";
> - makes loans that cannot be "repaid";
> - makes "bad loans"; and
> - uses lines of credit to "prop up" the "bad loans" it purportedly makes

(ECF 35 ¶¶ 39, 57.) Defendants' alleged statements, when considered together, surely "disparage[] the business reputation" of Plaintiff; further, "operating a criminal 'Ponzi Scheme'" is criminal. Plaintiff alleges that Defendants made these defamatory statements to third parties. (ECF 35 ¶¶ 30-31, 52-57.)[5] Accordingly, the Amended Complaint satisfies the first element.

## II. False Statements

To meet the second element of defamation, Plaintiff must allege that the statements were false. *Finley*, 2021 U.S. Dist. LEXIS 62926, at *33. "A false statement is one that is not substantially correct." *Batson v. Shiflett*, 325 Md. 684 (Md. 1992); *see also Russell v. Railey*, No. DKC-08-2468, 2012 U.S. Dist. LEXIS 49370, at *12 (D. Md. Apr. 9, 2012) (finding that plaintiff adequately alleged falsity by alleging that the statements were untrue and setting "forth a variety of facts that, when taken in light most favorable to [the] [p]laintiffs, tend to show" falsity that [plaintiffs' program] is a legitimate, government-approved program.").

Here, Plaintiff repeatedly alleges that Defendants' statements were "false," "unfounded," and "baseless." (ECF No. 35 ¶ 3, 9, 39, 45, 57, 61-63, 65-66, 68-70, 72-77.) Plaintiff further alleges "Solomon's financial position and stability remain exemplary and, in fact, improve annually." *Id.* ¶ 61. Specifically, Plaintiff alleges:

> As was true for Defendants' other defamatory statements outlined above, there was no basis for Defendants' defamatory statements about Solomon and no cause for their synchronized actions. To the contrary, Solomon at all relevant times, and up to today, has a well-deserved reputation for financial and professional integrity.
>
> As a direct and predictable result of Defendants' conduct, Solomon has had to spend additional resources that it would not otherwise expend on its independent auditor who, once freighted with CFR's false allegations, was required to conduct an "enhanced audit" to

---

[5] While Plaintiff alleges additional context in which the statements were made, such context is not required because "the words themselves impute the defamatory character [*per se*], no innuendo—no allegation or proof of extrinsic facts—is necessary." *Indep. Newspapers, Inc. v. Brodie*, 407 Md. 415, 441 (2009).

> investigate the (false) allegations; the independent auditor ultimately confirmed that Defendants' defamatory allegations were unfounded and baseless. Indeed, Solomon's 2021 audit (once again) provided that confirmation and more: Solomon's financial position and stability remain exemplary and, in fact, improve annually.
>
> . . .
>
> Defendants made false and defamatory statements concerning Solomon at the 2021 DILA conference. CFR made such statements through its agents and representatives, Defendants Kocolowski and Stephens, and as part of an unethical and unlawful effort to improperly gain a business advantage over Solomon. These defamatory statements were false, and they exposed Solomon to public scorn, contempt, and ridicule, thereby discouraging others in the community from having a good opinion of, or from associating or dealing with, Solomon.
>
> . . .
>
> Defendants' false and defamatory statements include, but are not limited to, the statements summarized in paragraph 57 above, including that Solomon is operating a criminal "Ponzi Scheme."

(ECF 35 ¶¶ 60-61, 68, 70.) At this stage, the court accepts Plaintiff's allegations as true and finds plausible that Defendants' statements were false. Accordingly, Plaintiff has met the second element.

## III.   Fault

For the third element of a defamation claim under Maryland law, Plaintiff must allege that Defendants are at fault for the defamatory statements. *Piscatelli v. Van Smith*, 424 Md. 294, 306 (2012).

### A.   Standard for Fault

"The 'fault' element of the calculus may be based on either negligence or actual malice." *Samuels v. Tschechtelin*, 135 Md. App. 483, 544 (2000). Analyzing a plaintiff's status and the subject matter of the speech is critical to "determine the appropriate standard for imposing liability" in defamation cases. *Blue Ridge Bank v. Veribanc, Inc.*, 866 F.3d 681, 686 (4th Cir.

10

1989); *see also National Life Ins. Co. v. Phillips Publ'g*, 793 F. Supp. 627, 634 (4th Cir. 1992) (explaining that in defamation cases, "[l]egal precedent requires a dual inquiry regarding the subject matter of the publication and the status of the defamed entity"). First, the court must examine Plaintiff's status as a "public figure"[6] or "private figure."[7] *See S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F. Supp. 2d 837, 843 (D. Md. 2005) (explaining that "[t]he third element is a reference to the varying degrees of malice required, dependent on the status of the defamed person or entity"). Second, the court must analyze whether the speech was "on matters of public concerns" or whether the speech was "of a purely private nature."[8] *National Life Ins. Co.*, 793 F. Supp. at 634.

Here, the parties do not dispute that Plaintiff, a nonprofit Church Extension Fund in Colorado, is a private figure and the speech was purely private in nature. *See Seley-Radtke v. Hosmane*, 450 Md. 468, 471-72 (2016) (explaining that "[p]urely private defamation involves a defamation action that arises 'when the reputation of a private individual is tarnished by a report of a private matter not of general or public concern'")). Accordingly, to meet the third element of a defamation claim, Solomon must allege "at a minimum the party making the false statements acted negligently." *Doe v. John Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 366 (D. Md. 2017).

---

[6] A public figure is defined as "[t]hose who, by reason of the notoriety of their achievements or the vigor and success with which they seek the public's attention, are properly classed as public figures and those who hold governmental office." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974).

[7] A private figure is generally defined as anyone who is not a public figure. *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 761-63 (1985) (holding that a credit reporting agency is a private figure); *Gertz*, 418 U.S. at 325 (holding that an attorney is a private figure).

[8] "It is speech on 'matters of public concern' that is 'at the heart of the First Amendment's protection.'" *Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 759 (1985) (quoting *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 776 (1978)). "In contrast, speech on matters of purely private concern is of less First Amendment concern." *Id.* at 759. In cases involving purely private concerns, "[there] is no threat to the free and robust debate of public issues; there is no potential interference with a meaningful dialogue of ideas concerning self-government; and there is no threat of liability causing a reaction of self-censorship by the press." *Id.* at 760.

11

Although the negligence standard applies to private plaintiffs generally, the heightened standard of actual malice applies to private plaintiffs in certain instances, including for example, where a plaintiff seeks punitive damages or must overcome a defendant speaker's conditional privilege. *Riccio v. Morelli*, No. 0371, 2021 Md. App. LEXIS 736, at 15 (Aug. 20, 2021) (explaining that "as a matter of Maryland common law, a plaintiff in a defamation action cannot recover punitive damages without a showing of knowing falsity, a standard which the Court of Appeals has also referred to as 'actual malice'"); *Seley-Radtke v. Hosmane*, 450 Md. 468, 490-503 (2016); *see Piscatelli v. Van Smith*, 424 Md. 294, 307 (2012) (explaining that "[t]o demonstrate abuse of the privilege, the plaintiff must demonstrate that the defendant made his or her statements with malice, defined as 'a person's actual knowledge that his [or her] statement is false, coupled with his [or her] intent to deceive another by means of that statement'") (quoting *Ellerin v. Fairfax Sav. F.S.B.*, 337 Md. 216, 240 (1995)). Finally, "if the statement is defamatory *per se*, damages are presumed when a plaintiff can demonstrate actual malice, by clear and convincing evidence, even in the absence of proof of harm." *Samuels v. Tschechtelin*, 135 Md. App. 483, 549 (2000).

Here, Plaintiff is proceeding under a theory of actual malice and, in the alternative, negligence.[9]

### B. **Actual Malice**

Defendants argue that Plaintiff fails to allege sufficient facts to give rise to a reasonable inference that Defendants acted with actual malice. (ECF 36-1 at 11.) Specifically, Defendants argue that "Solomon's Amended Complaint fails to allege sufficient facts to establish DILA

---

[9] On June 30, 2022, the court held a hearing on Defendants' Motion to Dismiss (ECF No. 19). At the hearing, Plaintiff's counsel stated Plaintiff is proceeding on a theory of actual malice. (ECF No. 28 at 31.) That notwithstanding, Plaintiff's Amended Complaint pleads negligence in the alternative to actual malice. (ECF No. 35 ¶ 45.) Therefore, the court will also address the parties' arguments regarding defamation under a negligence standard in Section III.C., *infra*.

conference statements were made with actual malice to prove Defendants' legal fault in publishing the statements." (ECF No. 36-1 at 10.)

"[F]or the purpose of defamation actions, malice is defined as 'a person's actual knowledge that his or her statement is false, coupled with his or her intent to deceive another by means of that statement.'" *Seley-Radtke*, 450 Md. at 496 (quoting *Piscatelli*, 424 Md. at 307-308)). "Actual malice, sometimes referred to as constitutional malice," requires a plaintiff to show that the defendant made the defamatory "statement 'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Batson v. Shiflett*, 325 Md. 684, 728 (1992) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)).

At the motion to dismiss stage, "[a]n averment of knowledge that the statement was false is a sufficient allegation of actual malice." *S. Volkswagen, Inc.*, 357 F. Supp. 3d at 844; *see Finley*, 2021 U.S. Dist. LEXIS 62926, at \*45 (finding the plaintiffs adequately alleged actual malice when the plaintiffs alleged the defendants "knew the statements . . . were false" and the defendants "knew of the falsity because they assisted" the plaintiff "in addressing the client complaint that is referenced in the [publication]"); *Redmonds Enter. v. CSX Transp., Inc.*, No. CCB-16-3943, 2017 U.S. Dist. LEXIS 81823, at \*9 (D. Md. May 30, 2017) (finding the plaintiff adequately alleged actual malice by making an averment of knowledge that the statement was false and supporting it with specific allegations); *Lora v. Ledo Pizza Sys.*, No. DKC-16-4002, 2017 U.S. Dist. LEXIS 118474, at \*25 (D. Md. July 27, 2017) (explaining that plaintiff's allegations that the defendants "acted intentionally, willfully, recklessly, and/or maliciously" were spare but sufficient "to constitute well-pleaded allegations of malice").

In *Russell v. Railey*, the court found that plaintiffs adequately alleged fault based on actual malice. 2012 U.S. Dist. LEXIS 49370 at \*14. The *Russell* court explained that it was sufficient

for the plaintiffs to allege that the "[d]efendants made these statements with malice, knowing they were false' and that the '[d]efendants published untrue statements of fact knowing they were false or with reckless disregard of the truth.'" *Id.* at *13. Additionally, the court acknowledged that the plaintiffs set forth additional allegations that the defendants were aware the statements were false or were reckless with regard to its truth. *Id.*

Here, Plaintiff alleges Defendants "at all relevant times, made their defamatory statements about Solomon with actual malice." (ECF No. 35 ¶ 63.) Plaintiff further alleges that "[t]his is the essence of fault: Defendants knew that their statements about Solomon were false, but they made their statements anyway." *Id.* ¶ 74. At this stage of the litigation, these allegations alone sufficiently allege actual malice, *see S. Volkswagen*, *supra,* but the Amended Complaint goes well beyond this bare minimum. (*see, e.g.,* ECF No. 35 ¶¶ 32-35, 44, 63-65, 74.) Plaintiff adequately alleges fault by a theory of actual malice.

### C. Negligence

Defendants argue that the Amended Complaint fails because Plaintiff does not allege a "duty or the standard of care [Defendants] owed to Solomon." (ECF 36-1 at 8.) In support, Defendants rely upon *Jones v. State*, 425 Md. 1 (2012), *Pendleton v. State*, 398 Md. 447 (2007), and *Grimes v. Kennedy Krieger Inst., Inc.*, 366 Md. 29 (2001). (ECF No. 36-1 at 8.) Defendants fail to consider that *Jones*, *Pendleton*, and *Grimes* are non-defamation tort cases based on the traditional duty-breach-causation-harm rubric. There is "a distinction between the kind of negligence required in a simple negligence cause of action, and that which is necessary to sustain a defamation claim." *Workman v. Kroger Ltd. P'ship I.*, No. 5:06-cv-00446, 2007 U.S. Dist. LEXIS 77974, at *20 (S.D. W. Va. Oct 11, 2007). These cases are therefore inapposite.

Maryland courts have consistently adopted the standard set forth in the Restatement (Second) of Torts § 580B for analyzing negligence in the context of a defamation claim. *Mejia v.*

*Telemundo Mid-Atlantic LLC*, No. GJH-19-1563, 2021 U.S. Dist. LEXIS 28519, at *7 (D. Md. Feb. 16, 2021) (analyzing negligence under Restatement (Second) of Torts § 580B in the context of a defamation case"); *Jacron Sales Co.*, 276 Md. at 596 (applying the § 580B negligence standard to private defamation cases); *Hawks v. Ruby*, No. 2098, 2019 Md. App. LEXIS 850, at *26-27 (Spec. App. Oct. 1, 2019) (same); *Seley-Radtke v. Hosmane*, 450 Md. 468, 472 (2016) (explaining that "this Court has held that a 'standard of negligence' as set forth in the Restatement (Second) of Torts § 580B (Am. Law Inst. 1977), is to be applied in cases of purely private defamation"); *Finley*, 2021 U.S. Dist. LEXIS 62926, at *45 (explaining that "to adequately show negligence, plaintiffs must allege facts sufficient to show that the defendant failed to act as a reasonable person under like circumstances in making the false and defamatory statements") (internal quotations omitted).

The Restatement (Second) of Torts sets forth the negligence standard for defamation actions:

> [C]onduct that creates an unreasonable risk of harm. (See § 282). The standard of conduct is that of a reasonable person under like circumstances. (See § 283). Insofar as the truth or falsity of the defamatory statement is concerned, the question of negligence has sometimes been expressed in terms of the defendant's state of mind by asking whether he had reasonable grounds for believing that the communication was true. Putting the question in terms of conduct is to ask whether the defendant acted reasonably in checking on the truth or falsity or defamatory character of the communication before publishing it.

RESTATEMENT (SECOND) OF TORTS, § 580B cmt. g.  Accordingly, "[i]n the context of defamation cases involving private plaintiffs, to adequately show negligence, plaintiffs must allege facts sufficient to show that the defendant 'failed to act as a reasonable person under like circumstances in making the false and defamatory statements.'" *Finley*, 2021 U.S. Dist. LEXIS 62926, at *44-45 (quoting *Hawks v. Ruby*, No. 03-C-15005270, 2019 Md. App. LEXIS 850, at *9 (Oct. 1, 2019))

(internal quotations removed); *Mejia v. Telemundo Mid-Atlantic LLC*, 2021 U.S. Dist. LEXIS 28519, at *9-10 (2021) (finding that the plaintiff's pleading was sufficient when the plaintiff alleged the defendant disseminated inaccurate information without any reasonable grounds for believing it to be true and failed to verify beforehand).

 Here, Plaintiff alleges:

> Defendants, moreover, have—at a minimum—failed to engage in appropriate due diligence (by, for example, examining the publicly available audited financial statements that explicitly were brought to their attention following past instances of defamation, or by directly bringing their purported "concerns" to the attention of Solomon or Mr. Crozier). They failed to reasonably investigate the accuracy of their claims prior to making them to others. As a result, they acted at least negligently.
>
> In making their false and defamatory statements at the 2021 DILA conference, Defendants were at least negligent because they failed to reasonably check the truth or falsity of their statements prior to publication. Defendants, at all relevant times, had the ability to access Solomon's website and review its publicly available offering circular and audited financial statements and had direct access to Solomon's leadership. Even the most basic due diligence would have confirmed that Defendants' statements were false and defamatory.

(ECF No. 35 ¶¶ 46, 72.) Accordingly, Plaintiff has met the third element.

### IV. <u>Harm</u>

 Where alleged statements are defamatory *per se*, a plaintiff's damage/harm is presumed; therefore Plaintiff is not required to allege harm. *Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 366 (2017) (citing *Hearst Corp. v. Hughes*, 297 Md. 112, 466 A.2d 486, 493 (Md. 1983)); *see Russell*, 2012 U.S. Dist. LEXIS 49370, at *13 (concluding that the fourth element of defamation, harm, is adequately alleged "because at least some of the statements in the Article are *per se* defamatory" and therefore, harm is presumed). Here, Plaintiff adequately alleges that

Defendants' statements were defamatory *per se*. Accordingly, Plaintiff has met the fourth element for a defamation a claim.

## V. Common-Interest Privilege

Defendants assert that Plaintiff's Amended Complaint should be dismissed because the statements are protected by the Common-Interest Privilege. (ECF 36-1 at 6 n.3.)

"Conditional privileges 'rest upon the notion that a defendant may escape liability for an otherwise actionable defamatory statement, if publication of the utterance advances social policies of greater importance than the vindication of a plaintiff's reputational interest.'" *Woodruff v. Trepel*, 125 Md. App. 381, 401 (1999) (quoting *Marchesi v. Franchino*, 283 Md. 131, 135 (1978)). "The common interest privilege is one of the four qualified or conditional privileges to defamation that 'is conditioned upon the absence of malice and is forfeited if it is abused.'" *Shirley v. Heckman*, 214 Md. App. 24, 42 (2013) (quoting *Piscatelli*, 424 Md. at 307). The common-interest privilege is the "the privilege to publish to someone who shares a common interest, or, relatedly, to publish in defense of oneself or in the interest of others." *Gohari v. Darvish*, 363 Md. 42, 57 (2001). More specifically:

> An occasion is conditionally privileged when the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know.

*Hanrahan v. Kelly*, 269 Md. 21, 28 (1973) (quoting RESTATEMENT OF TORTS § 596 (1938)). "[A] common interest may include interests in property, business and professional dealings, and can inhere in business dealings between the publisher and the recipient." *Gohari*, 363 Md. at 58 (internal citations omitted).

"If a trial court determines that a common law conditional privilege exists, a plaintiff seeking to defeat the privilege must prove that the defendant abused the privilege by making the

statements 'with malice, defined as a person's actual knowledge that his or her statement is false, coupled with his or her intent to deceive another by means of that statement.'" *Seley-Radtke v. Hosmane*, 450 Md. 468, 493 (2016) (quoting *Piscatelli*, 424 Md. at 307-308). It is inappropriate for a court to grant a motion to dismiss "on the basis of an asserted conditional privilege . . . where the complaint alleges facts that would support an abuse of that privilege." *Woodruff v. Trepel*, 125 Md. App. 381, 403 (1999); *see Fresh v. Cutter*, 73 Md. 87, 93-94 (1890) (explaining that "the plaintiff has the right notwithstanding the privileged character of the communication to go to the jury, if there be evidence tending to show actual malice, as when the words unreasonably impute crime, or the occasion of their utterance is such as to indicate, by its unnecessary publicity or otherwise, a purpose wrongfully to defame the plaintiff"). Further, "[a]buse of a conditional privilege is usually a question for the fact-finder, but a court can decide the question as a matter of law if the plaintiff fails to allege or prove facts that would support a finding of abuse." *Shirley*, 214 Md. App. at 44.

At this stage of the litigation, while Defendants assert that a conditional privilege exists, Plaintiff alleges Defendants acted with actual malice. It would therefore be premature to dismiss Plaintiff's Amended Complaint on the basis of the common-interest privilege.

## CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss (ECF No. 36) is **DENIED**. A separate order follows.

/S/
_____
Judge Julie R. Rubin
United States District Court

April 24, 2023